FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
SEP 24 2024
MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) Cr. No. 24-1312 JB |
| **KYLE LINKER,** | ) |
| Defendant. | ) |

## PLEA AGREEMENT

Pursuant to Rule 11, Fed. R. Crim. P., the parties notify the Court of the following agreement between the United States Attorney for the Northern District of Texas, acting under authority conferred by 28 U.S.C. § 515, and the Defendant, KYLE LINKER, with the advice and counsel of his attorney, Robert R. Cooper. This agreement is limited to the United States Attorney's Office for the District of New Mexico and does not bind any other federal, state, or local agencies or prosecuting authorities:

### REPRESENTATION BY COUNSEL

1. The Defendant understands the Defendant's right to be represented by an attorney and is so represented. The Defendant has thoroughly reviewed all aspects of this case with the Defendant's attorney and is fully satisfied with that attorney's legal representation.

### RIGHTS OF THE DEFENDANT

2. The Defendant further understands the Defendant's rights:

   a. to be prosecuted by indictment;

   b. to plead not guilty, or having already so pleaded, to persist in that plea;

   c. to have a trial by jury; and

    d.    at a trial:

        i.    to confront and cross-examine adverse witnesses,

        ii.    to be protected from compelled self-incrimination,

        iii.    to testify and present evidence on the Defendant's own behalf, and

        iv.    to compel the attendance of witnesses for the defense.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

3.    The Defendant agrees to waive these rights and to plead guilty to Count One of the information, charging a violation of 18 U.S.C. § 1512(c)(2), that being obstruction of justice.

## SENTENCING

4.    The Defendant understands that the minimum and maximum penalties provided by law for this offense are:

    a.    imprisonment for a period of not more than 20 years;

    b.    a fine not to exceed the greater of $250,000 or twice the pecuniary gain to the Defendant or pecuniary loss to the victim;

    c.    a term of supervised release of not more than 3 years to follow any term of imprisonment. (If the Defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the Defendant's supervised release could be revoked — even on the last day of the term — and the Defendant could then be returned to another period of incarceration and a new term of supervised release.);

    d.    a mandatory special penalty assessment of $100; and

    e.    restitution as may be ordered by the Court.

5. The parties recognize that the federal sentencing guidelines are advisory and that the Court is required to consider them in determining the sentence it imposes. The Defendant further recognizes that while the Defendant's attorney may have made a prediction or estimate of the sentence that the Court may impose, the Defendant understands that the Court is not bound by any such estimate or prediction.

## ELEMENTS OF THE OFFENSE

6. If this matter proceeded to trial, the Defendant understands that the United States would be required to prove, beyond a reasonable doubt, the following elements for violations of the charges listed below:

Count 1 of the information: 18 U.S.C. § 1512(c)(2), that being Obstruction of Justice:

*First*: The defendant obstructed, influenced, or impeded, or attempted to obstruct, influence, or impede an official proceeding;

*Second*: The defendant acted corruptly, that is, that the defendant acted knowingly and dishonestly with the wrongful purpose to obstruct, influence or impede the due administration of justice; and

*Third*: The defendant's alleged actions had a relationship in time, causation, or logic with the proceeding. In other words, the government must prove to you beyond a reasonable doubt that obstruction of an official proceeding was the natural and probable outcome of the defendant's conduct.

## DEFENDANT'S ADMISSION OF FACTS

7. By my signature on this plea agreement, I am acknowledging that I am pleading guilty because I am, in fact, guilty of the offense(s) to which I am pleading guilty. I recognize and accept responsibility for my criminal conduct. Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt of the offense(s) to which I am pleading guilty beyond a reasonable doubt, including any facts alleged in the information that increase the statutory

minimum or maximum penalties. I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:

8. In or about July 2021, I and a fellow Bernalillo County Sheriff's Office (BCSO) Deputy, hereafter referred to as Deputy 2, encountered an individual during the execution of a residential drug search warrant in Los Ranchos, New Mexico. This individual, hereafter referred to as Confidential Informant (CI), agreed to work with law enforcement as an informant in consideration of potential drug charges stemming from evidence located at CI's residence during the July 2021 search. I was to act as CI's primary law enforcement contact and direct his cooperation while CI acted as an informant.

9. CI continued trafficking drugs, including methamphetamine, in the weeks and months after he began working as a confidential informant. Because I had previously investigated CI as a potential target, I was able to receive notifications from other law enforcement agents if they conducted operations near CI's residence. In November 2021, I was contacted by a Special Agent with the Drug Enforcement Administration (DEA) about an operation the DEA was carrying out near CI's home. Fearing that the DEA operation might target CI, I contacted CI to warn him about the DEA operation. Based on my information, CI cancelled the transaction, and the DEA was unable to gather evidence against CI during this planned operation.

10. Through the discovery in this case, I learned that DEA agents examined CI's phone call logs and suspected that I had notified CI of DEA's activity and thwarted their operation. I also learned that DEA agents then planned another operation where they would target CI's residence without contacting me first.

11. On December 16, 2021, DEA agents executed a search warrant at CI's residence in Los Ranchos without my knowledge. I learned through the discovery in this case that the agents located a total of 471.9 grams of methamphetamine (actual) and a firearm in CI's vehicle, parked on his property.

12. CI admitted to the DEA agents that I had tipped CI off in November 2021. The DEA then planned an operation to confirm CI's information.

13. Shortly after the executing the search warrant on December 16, 2021, a DEA task force officer (TFO) contacted me and told me that DEA was planning to use an informant to purchase one pound of methamphetamine from CI. I told the TFO that CI was an active informant and that I could contact CI to get details about the transaction. The TFO told me not to contact CI and that the TFO would discuss the matter with his supervisor. Immediately after speaking with the TFO, I message CI to "call me ASAP," not knowing that CI was in the presence of law enforcement.

14. CI called me soon thereafter. I told CI that he was "on DEA's radar" and a TFO was trying to set up a drug buy from CI. I told CI that I was trying to have DEA cancel the operation. I also told CI to have someone else deliver the drugs.

15. After I spoke with CI, I had additional communications with the DEA TFO where I urged him to not go through with the drug transaction with CI. I then messaged Deputy 2 to express frustration with DEA.

16. Approximately one hour later, the DEA TFO contacted me and told me that the operation targeting CI would proceed. After that phone call, I texted Deputy 2 to inform him that DEA was proceeding with the drug purchase from CI. Deputy 2 responded, "Tell [CI] not to sell to anyone. And go to a hotel or stay with someone else for a bit." I later responded,

5

"What I should do is have you call [CI] that way when they ultimately say I tipped [CI] off I can show them my call logs and be like I haven't talked to him since that morning." Deputy 2 then texted, "I'll [expletive] do it. I still have his number." I replied, "Perfect. Plausible deniability for me because you know that's 100% what they going to say."

17. Later, during the afternoon of December 16, 2021, I left CI a voicemail stating, "my buddy [Deputy 2] and I are gonna call you from his phone." Several minutes later, Deputy 2 and I were in the same room, and I used his phone to call CI. I told CI that DEA was going forward with their drug operation and that CI should "shut everything down" because the DEA didn't currently have enough evidence to get a warrant for CI's residence. I then gave CI excuses CI could give that would avoid suspicions of why CI had called off the transaction. I told CI to not call my phone so that there would not be any additional connections between CI and me. I told CI to contact Deputy 2 instead.

18. After this interaction, I was suspended from active duty by the BCSO. I was concerned that CI was cooperating with law enforcement when I tipped him off to the DEA operation and I expressed my concerns to Deputy 2. I asked Deputy 2 to contact CI and make sure CI wasn't with law enforcement when I spoke with CI earlier in the day and told CI to shut down his drug trafficking operation. I then texted Deputy 2, "And yeah you might want to text [CI] and just say call me that might be okay especially since they don't know who you are. The more I think about it if they were there since I referred to you and used your phone you would have probably been [expletive] too and since you're not I think we're good."

19. On January 6, 2022, Deputy 2 agreed to meet CI in person. I learned through the discovery in this case that Deputy 2 met with CI in a parking lot. Deputy 2 attempted to search CI to make sure CI was not wearing a recording device. The CI was able to successfully record

6

the meeting with Deputy 2. During the meeting, Deputy 2 questioned whether CI was cooperating with law enforcement. Deputy 2 stated, "So, I'm gonna tell you this because I trust you and if I find out that you're like working up for the DEA and you're gonna try and rat me out, like I'm not gonna answer your phone calls or anything like that." CI told Deputy 2 that CI was not working with the DEA.

20. Shortly after Deputy 2 met with CI, Deputy 2 called me and informed me of what CI had said.

21. By signing this agreement, the Defendant admits that there is a factual basis for each element of the crime(s) to which the Defendant is pleading guilty. Specifically, the Defendant admits that he obstructed, influenced, impeded, or attempted to obstruct, influence, or impede the DEA's investigation of CI by notifying the CI of DEA's pending drug investigation targeting CI. The Defendant further admits that he acted corruptly, that is, he acted knowingly and dishonestly with the wrongful purpose of obstructing the DEA investigation. Finally, the Defendant admits his actions had the natural and probable outcome of obstructing the DEA's investigation into CI by attempting to make unavailable evidence that would have later been used in federal grand jury proceedings against CI.

22. The Defendant agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the Defendant's sentence, including, but not limited to, the advisory guideline offense level.

## **RECOMMENDATIONS**

23. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend as follows:

a. The United States agrees to recommend a sentence of probation. This recommendation does not extend to any sentence to be imposed upon revocation of probation or supervised release.

b. As of the date of this agreement, the Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. Consequently, pursuant to USSG § 3E1.1(a), so long as the Defendant continues to accept responsibility for the Defendant's criminal conduct, the Defendant is entitled to a reduction of two levels from the base offense level as calculated under the sentencing guidelines, and if applicable, a reduction of an additional offense level pursuant to USSG § 3E1.1(b). Further, the United States is free to withdraw this recommendation if the Defendant engages in any conduct that is inconsistent with acceptance of responsibility between the date of this agreement and the sentencing hearing. Such conduct would include committing additional crimes, failing to appear in Court as required, and/or failing to obey any conditions of release that the Court may set.

c. The Defendant understands that the above recommendations are not binding on the Court and that whether the Court accepts these recommendations is a matter solely within the discretion of the Court after it has reviewed the presentence report. Further, the Defendant understands that the Court may choose to vary from the advisory guideline sentence. If the Court does not accept any one or more of the above recommendations and reaches an advisory guideline sentence different than expected by the Defendant, or if the Court varies from the advisory

guideline range, the Defendant will not seek to withdraw the Defendant's plea of guilty. In other words, regardless of any of the parties' recommendations, the Defendant's final sentence is solely within the discretion of the Court.

24. Apart from the recommendations set forth in this plea agreement, the United States and the Defendant reserve their rights to assert any position or argument with respect to the sentence to be imposed, including but not limited to the applicability of particular sentencing guidelines, adjustments under the guidelines, departures or variances from the guidelines, and the application of factors in 18 U.S.C. § 3553(a).

25. Regardless of any other provision in this agreement, the United States reserves the right to provide to the United States Pretrial Services and Probation Office and to the Court any information the United States believes may be helpful to the Court, including but not limited to information about the recommendations contained in this agreement and any relevant conduct under USSG § 1B1.3.

## **DEFENDANT'S ADDITIONAL AGREEMENT**

26. The Defendant understands the Defendant's obligation to provide the United States Pretrial Services and Probation Office with truthful, accurate, and complete information. The Defendant represents that the Defendant has complied with and will continue to comply with this obligation.

27. The Defendant agrees that any financial records and information provided by the Defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

28. Except under circumstances where the Court, acting on its own, fails to accept this plea agreement, the Defendant agrees that, upon the Defendant's signing of this plea

agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement. The Court has not acted on its own if its rejection of the plea agreement occurs after the Defendant has expressly or implicitly suggested to the Court a desire or willingness to withdraw his or her plea or not to be bound by the terms of this plea agreement.

29. By signing this plea agreement, the Defendant waives the right to withdraw the Defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d) unless: (1) the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5); or (2) the Defendant can show a fair and just reason as those terms are used in Rule 11(d)(2)(B) for requesting the withdrawal. Furthermore, the Defendant understands that if the Court rejects the plea agreement, whether or not the Defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

30. The Defendant will not willfully fail to appear for any court appearance in this matter, nor willfully fail to surrender as ordered for service of any sentence.

31. The Defendant agrees not to engage in conduct that would constitute a new crime. Offenses that would be excluded for sentencing purposes under USSG § 4A1.2(c) are not within the scope of this paragraph's agreement.

32. Defendant agrees not to engage in conduct that would constitute obstructing or impeding the administration of justice under USSG § 3C1.1.

## WAIVER OF APPEAL AND POST-CONVICTION RIGHTS

33. The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction(s) and sentence, as well as any order of restitution entered by the Court. This waiver extends to any challenge to the manner in which the sentence was determined or imposed, including the district court's authority to make findings supporting the sentence.

34. The Defendant also waives the right to appeal any sentence imposed below or within the guideline range upon a revocation of supervised release in this cause number but may nonetheless appeal the determination of the revocation guideline range.

35. The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c) where such denial rests upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a).

36. In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

## GOVERNMENT'S ADDITIONAL AGREEMENT

37. Provided that the Defendant fulfills the Defendant's obligations as set out above, the United States agrees that:

    a. The United States will not bring additional criminal charges against the Defendant arising out of the facts forming the basis of the present information.

38.     This agreement is limited to the United States Attorney's Office for the District of New Mexico and does not bind any other federal, state, or local agencies or prosecuting authorities.

## VOLUNTARY PLEA

39.     The Defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises (other than the promises set forth in this agreement and any addenda). There have been no promises from anyone as to what sentence the Court will impose. The Defendant also represents that the Defendant is pleading guilty because the Defendant is in fact guilty.

## VIOLATION OF PLEA AGREEMENT

40.     The Defendant agrees that if the Court finds by a preponderance of the evidence that the Defendant has violated any provision of this agreement, the United States will be released from its obligations under the agreement. If the Defendant has pleaded guilty to any lesser-included offense(s), the Defendant's violation of this plea agreement will result in reinstatement of the greater offense(s). The Defendant waives any claim that the Defendant's guilty plea under the rejected agreement bars prosecution of any additional offenses on double-jeopardy grounds.

41.     The Defendant further agrees that in the event the Court finds that Defendant has breached this plea agreement, thus releasing the United States of its obligations under the agreement, such events do not constitute a fair and just reason under Rule 11(d)(2)(B) for withdrawing the guilty plea(s) entered pursuant to this agreement.

42.     Following the Court's finding of a breach of this agreement by the Defendant, should the United States choose to pursue any charge that was either dismissed or not filed as a

result of this agreement, the Defendant waives any defense to that charge or charges based on the lapse of time between the entry of this agreement and the Court's finding of a breach by the Defendant.

## SPECIAL ASSESSMENT

43. At the time of sentencing, the Defendant will tender to the United States District Court, District of New Mexico, 333 Lomas Blvd. NW, Suite 270, Albuquerque, New Mexico 87102, a money order or certified check payable to the order of the **United States District Court** in the amount of $100 in payment of the special penalty assessment described above.

## ENTIRETY OF AGREEMENT

44. This document and any addenda are a complete statement of the agreement in this case and may not be altered unless done so in writing and signed by all parties. This agreement is effective upon signature by the Defendant and an Assistant United States Attorney.

AGREED TO AND SIGNED this 24 day of September, 2024.

LEIGHA SIMONTON
UNITED STATES ATTORNEY
Northern District of Texas

SEAN M. LONG
Assistant United States Attorney
*Acting Under Authority Conferred by 28 U.S.C. § 515*
Texas State Bar No. 24056734
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone: 806-472-7351
Facsimile: 806-472-7394
E-Mail: sean.long@usdoj.gov

I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of my client's rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. In addition, I have explained to my client the elements to each offense to which she/he is pleading guilty. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

ROBERT R. COOPER
Attorney for the Defendant

I have carefully discussed every part of this agreement with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.

KYLE LINKER
Defendant